# In the United States Court of Federal Claims

|  |  |
|---|---|
| **TYSON LEE BEVIRT**, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> **THE UNITED STATES,** <br><br> *Defendant.* | No. 24-622 <br> (Filed: June 24, 2025) |

*Lindsay S.C. Brinton, Meghan S. Largent, Michael Armstrong, Marlee L. Rowe*, Lewis Rice, LLC, St. Louis, Missouri, for Plaintiffs.

*LeeAnn Kim*, Trial Attorney, *Adam R.F. Gustafson*, Deputy Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

**HADJI**, *Judge*.

Plaintiffs filed this action seeking just compensation under the Fifth Amendment for the Government's alleged taking of their property for recreational trail use under the National Trail Systems Act, 16 U.S.C. §§ 1241-51 (the Trails Act). *See generally* Compl., ECF 1. The core question for the Court is whether Plaintiffs have a property interest in this land. Before the Court are Plaintiffs' Motion for Partial Summary Judgment (ECF 24) and the Government's Cross-Motion for Summary Judgment (ECF 27). For the following reasons, Plaintiffs' Motion is **DENIED**, and the Government's Cross-Motion is **GRANTED**.

## BACKGROUND

At issue here is a 19.1-mile section of former railroad corridor in western North Carolina (the corridor). ECF 24-1 at 4, 11. In 1891, the North Carolina General Assembly incorporated the Hendersonville and Brevard Railway, Telegraph, and Telephone Company (HBR), which acquired the corridor through a series of conveyances made in late 1894 and early 1895 (the Source Deeds). 1891 N.C. Sess. Laws 431 § 1; ECF 24-27 at 2-44; ECF 24-29 at 5. A list of each Plaintiff and the corresponding Source Deeds at issue follows:

| Plaintiff[1] | Source Deed | Pl.'s Exhibit No. |
|---|---|---|
| Tina Diane Britt | M.C. Toms | AA-1 |
| Hamilton's Landing Homeowner's Association Inc. | H.G. Ewart & Wife | AA-2 |
|  |  | AA-3 |
| Amy Kathryn Parrish | J.H. Ripley | AA-3 |
| Timothy S. & Candace N. Cagle | H.G Ewart & Wife | AA-2 |
| Ronald Lee Kobos | J.H Ripley | AA-3 |
| Zachary C. & Evelyn J. Warner | W.A. Smith & C.M. Pace | AA-4 |
| Agudas Israel Congregation (Parcel A) | W.A. Smith & C.M. Pace | AA-4 |
| Agudas Israel Congregation (Parcel B) | W.A. Smith & C.M. Pace | AA-4 |
|  | G.M. Guice & Wife | AA-5 |
| Shaws Creek Farm Homeowner's Association Inc. | G.M. Guice & Wife | AA-5 |
|  | W.J Davis & Wife | AA-6 |
| Timothy R. Scott & Elizabeth Ann Berra | W.M. Giuce & Wife | AA-7 |
| Ronald E. & Letha G. Abeln | G.W. Allen & Wife | AA-8 |
| Zachary Austin Lund | J.E. Dalton & Wife | AA-9 |
| Susan H. Coppin | J.H. Ripley | AA-3 |
| Mitchell R. & Hannah N. Cantrell | Richard Allison & Wife | AA-10 |
| Tyson Lee Bevirt | Richard Allison & Wife | AA-10 |
| Beulah L & Leroy N. Landrum | M.L. Anders | AA-11 |
| Drew Yoder | M.L. Anders | AA-11 |
| Michael & Cynthia F. Lynch | M.L. Anders | AA-11 |
|  | J.W. Morgan & Wife | AA-12 |
| Lester & Deloris Brown | J.V. Blyth & Wife | AA-13 |
| Lei Shi | J.V. Blyth & Wife | AA-13 |

The interests HBR obtained through these original Source Deeds were transferred to four different railroad companies through the late 1800s and 1900s. *See e.g.,* ECF 24-29 at 4-5; ECF 24-30 at 2, 5, 47. Eventually, in 2014, Blueridge Southern Railroad (Blueridge or the Railroad) requested approval, and was granted authorization, from the Surface Transportation Board (STB) to acquire 91.8 miles of railroad, including the corridor. ECF 24-31 at 17; ECF 24-32 at 2-3.

Nearly seven years after Blueridge acquired the corridor, it again petitioned the STB, this time by filing a Verified Notice of Exemption pursuant to 49 C.F.R. § 1152.50, seeking authorization to abandon the corridor with the express aim "to facilitate interim use of the Line as a public recreation trail, consistent with 16 U.S.C. § 1247(d)." ECF 24-

---

[1] Plaintiffs are landowners of property adjacent, and as Plaintiffs claim, underlying the corridor. ECF 24 at 21. They have provided the Court with modern deeds of each Plaintiff, which they claim demonstrate a Fifth Amendment property interest in the corridor that is superior to the Source Deeds. ECF 24 at 21; *see e.g.,* ECF 24-4.

1 at 2-7. On April 27, 2021, the STB filed a notice of Blueridge's abandonment application in the Federal Register and stated that the abandonment exemption would be effective May 27, 2021, provided that no stay was implemented for reasons such as a request for interim trail use/rail banking pursuant to 49 C.F.R. § 1152.29. ECF 24-33 at 2-3.

Instead of filing a notice of consummation to fully abandon the line, in June 2021, Blueridge and Ecusta Rails2Trails LLC (Ecusta), filed a Petition for Interim Trail Use and Notification of Trails Use/Railbanking Agreement, outlining that Blueridge and Ecusta had already agreed to a trail use agreement and asked the STB to issue a Notice of Interim Trail Use or Abandonment (NITU). ECF 24-33 at 4; ECF 24-34 at 2. Thereafter, the STB issued the NITU, and the parties filed a notification of the trail use agreement that same day. ECF 24-35 at 2-3; ECF 24-36 at 2.

On April 19, 2024, Plaintiffs filed the instant action alleging that, as owners of the property adjacent to and underlying the corridor, their property was taken without just compensation in violation of the Fifth Amendment on the day the NITU was issued. Compl., ECF 1. In January 2025, Plaintiffs filed the Motion for Partial Summary Judgment presently at issue, alleging that: (1) Plaintiffs have a fee simple interest in the corridor based on their modern deeds; and (2) Plaintiffs retained a reversionary interest in the conveyed property. ECF 24 at 22. Thereafter, the Government filed its Cross-Motion for Summary Judgment, alleging that Plaintiffs fail to establish an ownership interest in the corridor and are therefore not entitled to just compensation.[2] ECF 27 at 8-9.

## LEGAL STANDARD

Rule 56(a) of the United States Court of Federal Claims states that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." *Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994).

The Supreme Court has instructed that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis omitted). Disputes over facts that are not outcome-determinative will not preclude the entry of summary

---

[2] Although the Court's Scheduling Order dated October 4, 2024, limited initial briefing to title issues, ECF 14, Plaintiffs seek a ruling on liability as well. ECF 24 at 33-34. Given that Blueridge entered into a trail use agreement, the Government represents that it will not dispute the issue of liability should the Court determine that the Source Deeds at issue conveyed an easement for railroad purposes. ECF 27 at 25-26.

[3] Court of Federal Claims Rule 56(a) is the same as Federal Rule of Civil Procedure 56(a). *Compare* RCFC 56(a) *with* Fed. R. Civ. P. 56(a).

judgment. *Id.* at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

A summary judgment motion is properly granted "against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and for which that party bears the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A nonmovant will not defeat a motion for summary judgment "unless there is sufficient evidence favoring the nonmoving party for [the fact-finder] to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." *Dairyland Power*, 16 F.3d at 1202.

## DISCUSSION

To establish a Fifth Amendment taking, a plaintiff must have a protectable property interest in the subject of the alleged taking. *Palmyra Pac. Seafoods, L.L.C. v. United States,* 561 F.3d 1361, 1364 (Fed. Cir. 2009). In determining whether a landowner has met this requirement in Trails Act cases, the Court considers the following three factors:

> (1) who owned the strips of land involved, specifically did the Railroad … acquire only easements, or did it obtain fee simple estates; (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

*Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996). State law governs "property rights of the parties in a rails-to-trails case." *Castillo v. United States*, 952 F.3d 1311, 1319 (Fed. Cir. 2020).

Plaintiffs seek summary judgment as to the first two *Preseault* factors, alleging that (1) the modern deeds definitively prove that Plaintiffs have a fee simple interest in the corridor, (2) the Source Deeds are void, and (3) the Railroad only obtained an easement to the corridor limited to railroad purposes. ECF 24 at 22-25, 33. Based on these alleged property interests, Plaintiffs argue that the NITU's issuance and resulting transfer of property for a non-railroad purpose effectuated a Fifth Amendment taking. ECF 24 at 22-25, 33. The Government alleges that the Railroad had a fee simple interest in the corridor on the day the NITU issued, so Plaintiffs could not have been subject to a Fifth Amendment

4

taking. ECF 27 at 16. Accordingly, the issue before the Court is what property interest, if any, do Plaintiffs have in the corridor at issue.

### I. Plaintiffs have not demonstrated a property interest in the land at issue on the day the NITU issued through the modern deeds.

Plaintiffs first argue that their modern deeds leave "no question" that they had a fee simple interest in the property at issue on the day that the NITU was issued. ECF 24 at 25. In making this argument, Plaintiffs cite *Chappell v. Donnelly*, to support the conclusion that they "may use deeds as evidence of proof of title so long as the deeds 'locate the land by fitting the description in the deeds to the earth's surface.'" ECF 24 at 26; 439 S.E.2d 802, 805 (N.C. Ct. App. 1994) (quoting *Andrews v. Bruton*, 86 S.E.2d 786, 788 (N.C. 1955)). Based on this interpretation of *Chappell*, Plaintiffs claim that modern deeds and plats are "arguably the best source of information to what the current Plaintiffs own" due to their significant detail. ECF 24 at 26.

Plaintiffs' interpretation of *Chappell* is unavailing because it misstates the court's holding. A plaintiff bears the burden of establishing title in actions for possession of land. *Mobley v. Griffin*, 10 S.E. 142, 142 (N.C. 1889). *Chappell* outlines that a plaintiff may do so through (1) the Real Property Title Act (which is unavailable against railroad rights of way pursuant to N.C. Gen. Stat. § 47B-3(6)) or (2) through "traditional methods of title." *Chappell*, 439 S.E.2d at 805. Traditional methods of title determination are outlined in *Mobley* as follows:

> (1) He may offer a connected chain of title, or a grant direct from the state to himself. (2) Without exhibiting any grant from the state, he may show continuous and adverse possession of the land in controversy under color of title in himself and those under whom he claims for 21 years before the action was brought. (3) He may show title out of the state by offering a grant to a stranger without connecting himself with it, and then offer proof of continuous possession under color of title in himself and those under whom he claims for seven years before the action was brought. (4) He may show, as against the state, possession under known and visible boundaries for 30 years, or, as against individuals, for 20 years before the action was brought. (5) He can prove title by estoppel, as by showing that the defendant was his tenant, or derived his title through his tenant, when the action was brought, (6) He may connect the defendant with a common source of title, and show in himself a better title from that source.

*Mobley*, 10 S.E. at 142-43 (internal citations omitted). Plaintiffs, as is their burden, do not adequately allege, let alone prove, that they meet any of the standards delineated in *Mobley*. Plaintiffs have not provided any connected chain of title or grant from the state, argued

adverse possession, nor asserted title by estoppel or that was derived through a tenant.[4] *See generally* ECF 24. Construed liberally, Plaintiffs' briefings may be read to implicate the common source of title doctrine, which requires plaintiffs "to connect both themselves and defendants with a common source of title and then show in themselves a better title from that source." *Chappell*, 439 S.E.2d at 805. However, Plaintiffs offer no proof of any common source of title, and to the extent Plaintiffs attempt to "show in themselves a better title," they fail to do so for the reasons outlined below. Therefore, Plaintiffs fail to carry their burden to demonstrate title to the corridor at issue based on the modern deeds proffered.

## II. Plaintiffs' allegations that the Source Deeds are void are unavailing.

Plaintiffs next challenge the adequacy of the Source Deeds, alleging that the deeds are void for vagueness.[5] ECF 31 at 21. Specifically, Plaintiff's challenge the Source Deeds' omission of a habendum clause and covenants of seizin or warranty. ECF 31 at 16. The Court finds this argument unavailing because voidness in a deed turns on whether the land in the deed can be identified, not whether these clauses are included.

"A deed purporting to convey an interest in land is void unless it contains a description of the land sufficient to identify it or refers to something extrinsic by which the land may be identified with certainty." *Overton v. Boyce*, 221 S.E.2d 347, 349 (N.C. 1976). Put different, a deed is void if it is "patently ambiguous." *Id.*

The Ripley deed, which is representative of the Source Deeds, conveys the Railroad the following:

> In consideration of the benefits to be [be my me] derived from the construction of its Railroad through my premises in said state and county particularly described as follows - that property in the town of Hendersonville known as the Ripley tanyard property and the property above Erraits Mill know as [F]uller [F]ord property and of one dollar for me in hand paid thereupon whereof is hereby acknowledged. I J.H. Ripley of said county to give grant bargain sell and convey to the

---

[4] Plaintiffs allege that the Government "is asking the Court to ignore twenty separate sets of modern deeds which clearly show the Plaintiffs' ownership over part or all of the relevant portions of the corridor." ECF 31 at 14. The Court does not ignore the modern deeds here, but instead finds that they alone are insufficient evidence to satisfy Plaintiffs' burden of proof as to whether they have a Fifth Amendment property interest under North Carolina law. *See McCotter v. Barnes*, 101 S.E.2d 330, 334 (N.C. 1958).

[5] In addition to their arguments about vagueness, the Government also avers that Plaintiffs challenged the Source Deeds by claiming that "a railroad corporation is without power to acquire and hold real estate except by statutory authority." ECF 27 at 25 (citing ECF 24 at 27). Plaintiffs categorically deny that they sought to prove lack of statutory authority. ECF 31 at 14-15 n.6 ("The question is not whether HBR could have acquired the relevant portions of the corridor as fee, but whether they did."). Therefore, the Court considers this argument, to the extent it was ever made, waived.

> Hendersonville and Brevard Railway Telegraph and Telephone Company and its successors forever a strip of land of sufficient width upon which to locate construct and operate and maintain a standard [gauge] rail road through said premises which is or may be staked or marked out by the engineer or engineers of said company and indicated upon the map by him or them and the president of said company placed on file in the office of the Clerk of said Henderson County as required by law such strip so marked out and indicated to be the land hereby conveyed provided that this deed shall be void unless said railroad company shall have constructed a railroad through said premises on or before the first day of August 189[5]. [W]itness my hand [and] seal this the twenty second day of [O]ct. A.[D]. 189[4].

ECF 27-5 at 2.

Of consequence, the deed references "that property in the town of Hendersonville known as the Ripley tanyard property and the property above Erraits Mill known as [F]uller [F]ord property." ECF 27-5 at 2. Reference to other property in a deed as a method of describing land has been upheld in North Carolina.[6] For example, in *McCotter v. Barnes*, the deed described the property as "a tract or parcel of land…situated, lying and being in the county and State aforesaid and in No. 3 township adjoining the lands of *C. A. Flowers, S. H. Muse and others….*" 101 S.E.2d 330, 332 (N.C. 1958). Further, in *McCotter,* the court rejected the idea that a more precise metes and bounds description was necessary. *See Id.* at 334-35. The Ripley Deed, like the *McCotter* one, describes the land by reference to other property. Accordingly, the Court finds the Ripley Deed, like the other source deeds, has sufficient detail to identify the property and is therefore a valid deed.

### III. The Source Deeds at issue conveyed a fee simple interest to HBR, Blueridge's predecessor in interest.

Plaintiffs next challenge the property interest conveyed in the Source Deeds, alleging that HBR only acquired an easement restricted to railroad purposes. ECF 24 at 30. They argue that the Railroad sold its easement for a non-railroad purpose under the NITU, thus extinguishing the easement and simultaneously leaving Plaintiffs with an unencumbered property interest in the land at issue. ECF 24 at 11.

North Carolina law presumes that if land is conveyed, it was a fee simple conveyance, absent conflicting provisions in the granting instrument. N.C. Gen. Stat. § 1280 (1883); *McCotter*, 101 S.E.2d at 334. Here, the nearly identical deeds at issue all

---

[6] As described *infra*, North Carolina courts have also recognized that deeds contemplating future action are not void for vagueness.

include the hallmarks of a fee simple conveyance. Specifically, the Source Deeds explicitly convey "a strip of land" and reference elsewhere "the land hereby conveyed." *E.g.*, ECF 27-5 at 2. Such language suggests an unequivocal grant of land, not an easement, and no conflicting provisions contradict this interpretation. As such, the Court begins its analysis with the underlying presumption the grant was a fee simple conveyance. *McCotter*, 101 S.E.2d at 334.

The North Carolina Supreme Court similarly interpreted a grant of land under this presumption in *McCotter*, concluding that all operative clauses of the deed were in harmony with the fee simple conveyance in the granting clause. *Id.* at 334. Specifically, as in the matter at hand, the deeds in *McCotter* were for nominal consideration—for one dollar here and for two dollars in *McCotter*. *E.g.*, ECF 27-5 at 2; 101 S.E.2d at 334. Likewise, both the Source Deeds here and those in *McCotter* allow for future action to determine the exact boundaries of the land conveyed (*compare* "may be staked or marked out by the engineer or engineers of [HBR]," *with* "[t]o be located by [the grantee]") and included clauses either conditioning the conveyances on, or restricting them to, railroad purposes (*compare* "this deed shall be void unless said railroad company shall have constructed a railroad through said premises," *with* "there shall be no building other than for railroad use"). ECF 27-5 at 2; 101 S.E.2d at 332. Just as in *McCotter*, the Court finds collectively that these characteristics do not themselves conflict with an "unqualified fee simple estate" and as such, do not override the presumption of a fee simple conveyance for this grant of land. 101 S.E.2d at 334-35.

Acknowledging that the Supreme Court of North Carolina deemed the deeds in *McCotter* as unencumbered fee simple conveyances, Plaintiffs seek to establish that this matter is more analogous to *International Paper Company v. Hufham*. ECF 24 at 32; 345 S.E.2d 231, 234 (N.C. Ct. App. 1986). In that case, the deed granted the railroad "the right and privilege by their agents and servants to enter upon each and every tract or parcel of land belonging to or held by me." *Int'l Paper*, 345 S.E.2d at 233-34. This granting clause starkly juxtaposes that at issue here, which grants "forever a strip of land of sufficient width upon which to locate construct operate and maintain a standard [gauge] railroad." *E.g.*, ECF 27-5 at 2. The language in *International Paper* expressly indicates a retained interest in the property by the grantor and provides for a restricted right to enter the property, whereas the Source Deeds here provide for a right to a piece of land forever, even if such right is limited to railroad purposes. *Int'l Paper*, 345 S.E.2d at 233-34; ECF 27-5 at 2. As such, while the Court in *International Paper* held that the deed conveyed no land and instead created an easement, that has no bearing on the entirely distinct language of the conveyance at issue here. 345 S.E.2d at 234. Accordingly, the Court rejects Plaintiffs' assertion that the deeds here are "far closer to those of *International Paper*, than those of

8

*McCotter*," particularly as Plaintiffs fail to provide any actual evidence or explanation of this legal conclusion. ECF 24 at 32.[7]

Finally, perhaps sensing that their reliance on *International Paper* is misplaced, Plaintiffs concede that the Source Deeds "do not fit so neatly as being identical to those in *McCotter* [or] *International Paper*…" ECF 24 at 32. Plaintiffs alternatively attempt to analogize instead to *Brown v. United States*, where this court held that easements conveyed were for railroad purposes. ECF 24 at 32; 153 Fed. Cl. 318 (2021). However, Plaintiffs again make little attempt to compare the *Brown* deeds to the Source Deeds at issue here, nor does this Court see how they are more analogous than the deeds in *McCotter*.

Therefore, because Plaintiffs fail to provide any support to overcome the presumption of a fee simple conveyance, the Court finds as a matter of law that the Source Deeds granted HBR a fee simple conveyance, to which Plaintiffs retained no reversionary interest. Having failed to establish a property interest in the land at issue, the Court further finds that Plaintiffs have not established the existence of an essential element to their case for which they bear the burden of proof at trial, and thus summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 322-23.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment (ECF 24) is **DENIED**, and the Government's Cross-Motion for Summary Judgment (ECF 27) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly. The Government's Motion to Stay the Case (ECF 55) is **DENIED** as moot.

**IT IS SO ORDERED.**

PHILIP S. HADJI
Judge

---

[7] Plaintiffs also cite a number of Requests for Admission (RFA) Responses, claiming that the Government "has already admitted that each of the Plaintiffs owned the relevant property." ECF 24 at 14-15, 25. Having carefully reviewed the RFA Responses, the Court finds that none actually include an unqualified admission that Plaintiffs owned each of the respective properties underlying the corridor. *See e.g.*, ECF 24-23 at 2-3.